1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

| FIONA M., | Case No.: 3:24-cv-00568-AHG |
|---|---|
| Plaintiff, | **ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW AND AFFIRMING THE COMMISSIONER'S FINAL DECISION** |
| v. | |
| LELAND DUDEK, Acting Commissioner of Social Security,[1] | |
| Defendant. | **[ECF No. 10]** |

12
13
14
15
16
17
18
19

20        Plaintiff Fiona M. ("Plaintiff") filed this action on March 25, 2024, seeking review

21  of the Commissioner of Social Security's ("Commissioner") denial of her application for

22  disability insurance benefits. ECF No. 1. Pursuant to the Court's Scheduling Order, the

23
24
25

_____

26  [1] Leland Dudek became the Acting Commissioner of the Social Security Administration
27  on January 20, 2025. Although Plaintiff originally brought this action against Former
    Commissioner Martin O'Malley, this case may properly proceed against Leland Dudek
28  pursuant to 42 U.S.C. § 405(g).

parties filed a Joint Motion for Judicial Review on October 21, 2024, stating their positions on the disputed issues in the case. ECF No. 10.

After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court **AFFIRMS** the Commissioner's denial of disability insurance benefits.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act on November 22, 2021, alleging a disability onset date of September 14, 2021. Certified Administrative Record ("AR") 15, 63. The Commissioner denied Plaintiff's claims for benefits upon initial review on March 18, 2022, and again upon reconsideration on September 7, 2022. AR 100, 106. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place telephonically on September 14, 2023. AR 32-61.

On October 24, 2023, the ALJ issued an unfavorable decision denying Plaintiff's application, finding that Plaintiff had engaged in substantial gainful activity since September 14, 2021, and, in the alternative, that she could perform her past relevant work, and thus Plaintiff had not been disabled from her alleged disability onset date through the date of the ALJ's decision. AR 17, 26-27.

Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 1. The Appeals Council denied Plaintiff's request for review on January 25, 2024, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Plaintiff timely appealed the denial to this Court for federal judicial review on March 25, 2024. ECF No. 1; 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d at 676, 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

### III.    SUMMARY OF ALJ'S FINDINGS

#### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id. See also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. *Lounsburry*, 468 F.3d at 1114.

---

[2] Unless otherwise noted, all references to the agency regulations herein are to the regulations in effect at the time of the ALJ's decision. *See, e.g.*, SSR 16-3, 2016 SSR LEXIS 4 n.27 (S.S.A. 2016) ("When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."); *Anne B. v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-02146-HZ, 2019 WL 6976034, at *8 (D. Or. Dec. 20, 2019) (collecting cases for the proposition that "[t]he applicable regulations are those in effect at the time the ALJ issued his decision"). The regulations governing Title II disability insurance benefits ("DIB") are located in 20 C.F.R. § § 404.1 *et seq.*

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-9p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of her impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess her "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that she is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1). The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. § 404.1520; *Tackett*, 180 F.3d at 1099.

### B. The ALJ's Application of the Five-Step Process in This Case

At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity since her alleged disability onset date of September 14, 2021. AR 17. Specifically, the ALJ found that Plaintiff's earnings in the fourth quarter of 2021 and from December 7, 2022, onward "exceed the level of presumptive substantial gainful activity and that the claimant therefore was not disabled during such periods." AR 17. Though the ALJ made this conclusion, which would ordinarily stop the analysis and compel a finding of non-disability at step one, the ALJ proceeded through the subsequent steps of the five-step process. AR 17. Accordingly, at step two, the ALJ determined that Plaintiff had the severe impairments of cervical degenerative disc disease, lumbar degenerative disc disease with lumbar spondylosis, and breast cancer. AR 18.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listing, noting in particular that he had considered Listings 1.15, 1.16, and 13.10. AR 19-20. The ALJ determined that Plaintiff has mild limitations in understanding, remembering, or applying information; and mild limitations in interacting with others, concentrating, persisting, and maintaining pace. AR 18-19. The ALJ also determined that Plaintiff has mild limitations in adapting or managing oneself. AR 18-19.

Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R. § 404.1567(b) with certain exertional and postural limitations. AR 20. Specifically, the ALJ determined that Plaintiff:

. . . can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently, and she can stand and/or walk six hours and sit six hours in an eight-hour workday with normal breaks. She can occasionally climb ramps or stairs, but she can never climb ladders, ropes, or scaffolds. In addition, she can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead bilaterally, and she can frequently handle, finger, and feel.

AR 20.

At step four, the ALJ concluded that Plaintiff is capable of performing past relevant work as a Case Worker, Child Welfare (light exertion), Social Service Worker (sedentary exertion) or Social Worker for Health Services (sedentary exertion). AR 26. The ALJ reached this conclusion based on the testimony of the vocational expert, who opined during the hearing that the demands of Plaintiff's past relevant work would not be precluded by the RFC assigned by the ALJ. AR 26. Therefore, the ALJ—finding that Plaintiff was not disabled—did not proceed to step five. AR 27.

## IV. DISCUSSION

Plaintiff brings two claims of error in the Joint Motion: 1) the ALJ failed to properly evaluate the medical opinion evidence of Dr. Joseph Hong; and 2) the ALJ failed to specifically identify how Plaintiff's activities of daily living contradicted her testimony. ECF No. 10. As discussed below, the Court **AFFIRMS** the Commissioner's denial of disability insurance benefits.

### A. The ALJ Properly Assessed Dr. Hong's Opinion

As the first charge of reversible error, Plaintiff asserts that the ALJ mischaracterized the record and "conveniently ignored [] numerous abnormal findings" supporting limitations put forth by Dr. Hong. ECF No. 10 at 11-12. Plaintiff maintains the ALJ's assessment of Dr. Hong's medical opinion was not only conclusory but also incorrect in that it discredited Dr. Hong's opinion based on Plaintiff's activities of daily living. ECF No. 10 at 11-12. The Court disagrees.

### 1.  Legal Standard

With respect to the ALJ's consideration of medical opinion evidence, the Social Security Administration's revised regulations for considering medical opinions and prior administrative findings, found at 20 C.F.R. § 404.1520c(c)(1)–(c)(5), apply because Plaintiff applied for disability after March 27, 2017. AR 15, 181-82 (filed in November 2021). The Ninth Circuit has recognized that these new regulations upend the longstanding treating physician rule. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Rather than attributing deference to a medical opinion based on the nature of the relationship between the physician and the claimant, an ALJ must evaluate the "persuasiveness" of any medical opinions. *Id.* at 792.

In evaluating persuasiveness, an ALJ must consider the medical source opinion's supportability, its consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. *Id.*; 20 C.F.R. § 404.1520c(c)(1)–(c)(5). Though an ALJ may discuss each of the factors to be considered in his opinion, the regulations only require the ALJ to explain how he considered the most important factors – supportability and consistency. 20 C.F.R. § 404.1520c(a).  Supportability examines the relevant objective medical evidence and supporting explanations presented by the source. 20 C.F.R. § 404.1520c(c)(1). Consistency examines the evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

Under the revised regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F. 4th at 787; *see also Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (explaining how an ALJ weighing a medical opinion must provide an explanation supported by substantial evidence, which articulates how they considered supportability and consistency); *Sloane S. v. Kijakazi*, No. 21cv1043-MMA-MSB, 2023 WL 2017284, at *4 (S.D. Cal. Feb. 15, 2023). ALJs must address how they considered the consistency and supportability factors

in sufficient detail to allow a reviewing court to determine whether that reasoning is supported by substantial evidence. *Titus L.S. v. Saul*, No. 20cv04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)).

Ultimately, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Massey v. Kijakazi*, No. 21-35986, 2022 WL 16916366, at *1 (9th Cir. Nov. 14, 2022) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014)); *see also Labryssa v. Kijakazi*, No. 21cv04233-BLF, 2022 WL 2833981, at *7 (N.D. Cal. July 20, 2022) (finding a lack of substantial evidence where the ALJ failed to engage with the medical opinion "in any meaningful sense" and "made only a passing assessment" of the supportability and consistency factors).

## 2. Analysis

The medical opinion at dispute in this matter is an essential job functions report in the form of a check-the-box questionnaire that provides Dr. Hong's assessment as to whether Plaintiff can complete—without assistance or accommodation—essential functions of a protective services worker position. AR 1304-08. In the February 2023 report, Dr. Hong assessed Plaintiff's ***temporary*** limitations as no lifting of greater than 15 pounds, no high impact exertional physical activity or contact, no more than eight hours of overtime per pay period as tolerated, extra time to complete tasks, and mobility breaks every 30-45 minutes. AR 1307. Dr. Hong also noted accommodations that would enable Plaintiff to safely perform the essential functions, including hybrid work with a 90 percent work-from-home schedule, unpaid time for medical appointments, warm work conditions, an ergonomic seat and desk, the ability to alternate between sitting, standing, and stretching every 30-45 minutes, and the ability to lay down as needed. AR 1307. Dr. Hong also noted Plaintiff should limit driving to two 20-minute trips per day. AR 1307. Dr. Hong specified the limitations were temporary with an end date of July 31, 2023. AR 1307.

The ALJ found Dr. Hong's opinion unpersuasive. AR 25. First, the ALJ found Dr. Hong's opinion unsupported by explanation. AR 25. Dr. Hong's assessment in the February 2023 report is void of explanation as to why Plaintiff requires such accommodations despite Plaintiff's "normal gait and largely intact strength" and despite "no evidence that she reported the need for frequent mobility breaks." *See, e.g.*, AR 25, 376-77, 565-67; *Kitchen*, 82 F.4th at 740-41 ("we have accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation"). Though an opinion put forth in a check-the-box questionnaire cannot be the sole basis for an ALJ finding a medical opinion unpersuasive, Dr. Hong failed to cite to objective medical evidence to support his conclusions, such as including references to his impressions from other observations of Plaintiff. Indeed, a review of Dr. Hong's treatment records shows that they are at odds with some aspects of his assessment. *See, e.g.*, AR 1229, 1233 (where despite Dr. Hong noting Plaintiff exhibited "strength 5/5," "gait normal" and a normal range of motion, Dr. Hong concludes Plaintiff's limitations are severe enough to where she cannot lift more than 15 pounds); *see Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("the regulations give more weight to opinions that are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3)"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, *id.,* or by objective medical findings.").

Second, the ALJ found Dr. Hong's medical opinion inconsistent with other evidence in the record. AR 25. The ALJ accurately cited multiple records in this regard. For example, the ALJ pointed to progress notes from the period following Dr. Hong's February 2023 assessment indicating Plaintiff's steady gait and largely intact strength; as the ALJ highlighted, the progress notes are absent of indication that Plaintiff **requested** mobility breaks or that her providers **instructed** her to take such breaks. AR 912, 1543-44, 1578-79. The ALJ's conclusion is also consistent with records from the period preceding Dr. Hong's February 2023 assessment. The ALJ pointed to records reflecting Plaintiff's "normal gait,"

"normal motor strength," ability to "move[] all four extremities with normal strength and sensation," and ability to "ambulate[] without difficulty." AR 376-67, 565-67, 800-801, 811, 1177, 1218. Also in these records, Plaintiff did not request mobility breaks nor did her medical providers instruct her to take such breaks. Therefore, the ALJ adequately provided a reasonable explanation supported by substantial evidence in the record for rejecting Dr. Hong's opinion, which is all that is required. *Sara M. v. Kijakazi*, No. 5:21-CV-01554-JC, 2022 WL 17968073, at *7 (C.D. Cal. Dec. 23, 2022) ("the Court cannot second-guess the ALJ's reasonable consideration of the record evidence as a whole. Here, the ALJ appropriately assessed [the physician's] opinion by considering its "supportability" and "consistency.").

Though Plaintiff offers her visit with neurosurgeon Dr. Osorio as support for her contention that the ALJ mischaracterized the record, the ALJ's reasoning stands. Dr. Osorio did not recommend Plaintiff alternate positions or take mobility breaks every 30-45 minutes. AR 24-25. Adding to this, during Plaintiff's visit with Dr. Osorio on July 25, 2023, Dr. Osorio specifically noted Plaintiff had the option to wait before pursuing aggressive treatment vis-à-vis surgical intervention: "If she does have worsening neurological disease we may need to pursue the surgery sooner but at this time I described that progression of neurological disease with her underlying stenosis is commonly slow in progression and we do have the ***luxury of waiting***." AR 24, 1540-41. Plaintiff references a mischaracterization but does not adequately explain which specific part of the record is mischaracterized, which stands in contrast to the laundry list of exhibits accurately cited by the ALJ. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by providing "conclusory reasons" lacking specificity for his rejection of Dr. Hong's opinion, citing to *Embrey v. Bowen* for the proposition that conclusory opinions do "not achieve the level of specificity" required by the regulations. 849 F.2d 418, 421–22 (9th Cir. 1988); ECF No. 10 at 12. However, while in *Embrey* the

ALJ offered a conclusion without explanation (concluding that the "medical opinions are not supported by sufficient objective findings"), the ALJ in this matter properly "set forth his own interpretations" by listing specific examples of how the record is inconsistent with Dr. Hong's opinion, which is all that is required. *Id.* at 421; AR 25; *see also Walker v. Comm'r of Soc. Sec. Admin.*, No. 22cv1871-EJY, 2024 WL 64784, at *4 (D. Nev. Jan. 4, 2024) (to 'build an accurate and logical bridge' from the evidence to his conclusions, an ALJ must include record citations to support his conclusion regarding supportability and consistency); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings").

Additionally, Plaintiff argues the ALJ erred by discrediting Dr. Hong's opinion when he referred to Plaintiff's engagement in yoga, gardening, and walking for self-care. AR 25. Plaintiff cites to *Smolen v. Chater* for the proposition that an ALJ must be cautious in determining that daily living activities are inconsistent with a claimant's testimony about pain given "many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically or take medication." 80 F.32 1273, 1287 n. 7 (9th Cir. 1996); ECF No. 10 at 10. Plaintiff takes this proposition out of context. The section of *Smolen* that Plaintiff cites mainly concerns the ***evaluation of a claimant's testimony*** and presents a two-step process for evaluating such testimony. In the present case, the ALJ—when assessing the degree of persuasiveness of Dr. Hong's opinion—cited to Plaintiff's independence in activities of daily living and her ability to yoga, garden, and walk for self-care as evidence supporting the ALJ's conclusion that Dr. Hong's opinion is inconsistent with the overall record. AR 25. The same is true of Plaintiff's citation to *Reddick v. Chater*. From the *Reddick* court, Plaintiff highlights the following: "Only if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." 157 F.3d at 722 (citations omitted); ECF 10 at 10. Plaintiff's application of *Reddick* deals with the rejection of ***subjective testimony*** about a plaintiff's pain.

Further, the ALJ relied on more than Plaintiff's daily activities to support his conclusion regarding Dr. Hong's opinion (*see* AR 25, 376-77, 565-67, 800-01, 811, 912, 1177, 1218, 1229, 1233, 1543-44, 1578-79). As Defendant highlighted, error in the ALJ's reference to Plaintiff's daily activities specific to the assessment of Dr. Hong's opinion would be harmless, because the ALJ provided other cogent reasons supported by substantial evidence to discount the opinion. *See De Guzman v. Astrue*, 343 F. App'x 201, 206 (9th Cir. 2009) (citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("While the ALJ's reliance on this one episode is not a clear and convincing reason [], it was harmless error in light of the other specific and cogent reasons the ALJ cited in support of his adverse credibility determination.").

Notably, even assuming for the sake of argument that the ALJ erred in rejecting Dr. Hong's opinion, Dr. Hong's recommendation was ***temporary*** (spanning the five-month period of February 2023 to July 2023) and thus fails to meet the 12-month requirement under the pertinent regulation. *See* 42 U.S.C. § 423(d)(1)(a) (where a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than ***12 months***").

In sum, the ALJ's analysis of and reliance on the record to explain his reasons for finding Dr. Hong's opinion unpersuasive are sufficient to meet the supportability and consistency standard. The ALJ's assessment of Dr. Hong's opinion is supported by substantial evidence. Therefore, the Court finds the ALJ did not err in finding Dr. Hong's opinion unpersuasive.

### B. The ALJ Did Not Commit Harmful Error by Discounting Plaintiff's Testimony Regarding Her Daily Living Activities

As another charge of reversible error, Plaintiff asserts that the ALJ failed to specifically identify any part of Plaintiff's testimony he believed was not credibly related to her activities of daily living. ECF No. 10 at 17. Defendant argues the ALJ not only

highlighted specific records showing Plaintiff engaged in activities of daily living contradicting her allegations but also provided additional, sound grounds for discounting Plaintiff's testimony.  ECF No. 10 at 19-22.

### 1.  Legal Standard

An ALJ evaluating a claimant's testimony regarding the extent of her symptoms and impairments must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, an ALJ must assess whether there is objective medical evidence to support the testimony. *Id.* If that is the case, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). An ALJ must "specifically identify the testimony [he] finds not to be credible ... and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).[3] "[A]n ALJ may

---

[3] On March 28, 2016, the Social Security Administration issued new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 416.929. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, 848 F. App'x 718, 721 (9th Cir. 2021) (applying the two-step inquiry in a recent case appealing an ALJ's decision from 2018, in which the newer regulations were applied); *Vooge v. Saul*, 840 F. App'x 253, 254 (9th Cir. 2021) (same, in case involving an ALJ's opinion issued in January 2019). *See also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's assessments of an individual's testimony).

not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680.

If the ALJ fails to meet these requirements for specificity, the Court is not free to fill in the gaps. *Lambert*, 980 F.3d at 1278. It is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Id.* A court is therefore "constrained to review the reasons the ALJ asserts." *Id.* (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

### 2. Plaintiff's Testimony

In a Function Report, Plaintiff stated she suffers from cervical stenosis, experiences limited range of motion, and feels her head is "too heavy" for her neck. AR 245. She described difficulty sitting or standing at the computer; after sitting or standing for more than 20 minutes, she has to lay down and use a heating pad. AR 245. Plaintiff has trouble walking—at times due to her legs shaking—and she occasionally uses a walking stick. AR 245. Plaintiff further described difficulty holding a pen or using a computer mouse. AR 245.

Plaintiff stated that prior to her illness, she was able to exercise, drive, and garden, but that she is no longer able to engage in these activities. AR 246. She reported difficulty raising her arms to put on clothes and difficulty standing after bathing. AR 246. When her neck and back are exceedingly stiff, she skips showering. AR 246.

Plaintiff reported she is able to prepare simple meals for breakfast and lunch. AR 247. She orders groceries online and semi-prepared meals from an outside provider. AR 247. With respect to household chores, Plaintiff is able to do laundry, wipe counters, feed her pets, and pay bills online. AR 247. She requires help or encouragement to do some activities and elicits the help of a housekeeper. AR 247. Further, Plaintiff is able to go outside daily (except when it is wet or cold) and drive short distances during the day. AR 247. Plaintiff also stated that her current hobbies include watching television, listening to podcasts, and yoga. AR 248. She described not being able to lift things to garden, cook, or

3:24-cv-00568-AHG

drive. AR 248. Further, Plaintiff reported that due to her medications, she can no longer tolerate wine tasting. AR 248.

Plaintiff described spending time with others through gentle yoga, acupuncture, and massage. AR 248. On October 1, 2021, and November 5, 2021, during meetings with her psychotherapist, Plaintiff reported taking yoga classes, and on December 3, 2021, Plaintiff stated she is able to complete her activities of daily living. AR 721, 731, 738. On May 20, 2022, Plaintiff's psychotherapist noted Plaintiff was "engaging in self-care by walking, talking to others, and 'trying to take it easy.'" AR 770. At a subsequent session on July 27, 2022, Plaintiff's psychotherapist noted Plaintiff's self-care regimen included yoga and gardening. AR 781.

At a telephonic hearing on September 14, 2023, Plaintiff provided further testimony about her physical conditions specific to her activities of daily living. Plaintiff testified she cannot drive. AR 49. Plaintiff also reported that over the weekend she was unable to do housework, cooking, cleaning, or yardwork. AR 53. When asked whether she uses a medical assistive device to aid in her conditions, Plaintiff testified she uses a cane "maybe once a month." AR 45.

### 3. The ALJ's Reasons for Rejecting Plaintiff's Testimony

Plaintiff has the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease with lumbar spondylosis, and breast cancer. AR 18. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying the first step of the inquiry. AR 18.

The ALJ also found no evidence of malingering. Therefore, in order to reject Plaintiff's testimony, the ALJ was required to state "specific, clear and convincing reasons, supported by substantial evidence from the administrative record" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms. *Austin v. Saul*, 840 F. App'x 899, 901-02 (9th Cir. 2020) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (punctuation omitted)). Even if [a] claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting

the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Further, when objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. *Id.* at 498. Notwithstanding this latitude, an ALJ is required to "specifically identify the testimony ... he finds not to be credible and ... explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208.

As Plaintiff correctly points out, the ALJ made a boilerplate statement regarding Plaintiff's testimony that is commonly found in ALJ decisions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 21.

The ALJ then continued his analysis—pointing to various records indicating a lack of congruity between Plaintiff's statements about her activities of daily living and Plaintiff's statements about her condition. For example, the ALJ pointed to record evidence that Plaintiff engaged in gardening for self-care. AR 22, 25, 781. This evidence contradicts Plaintiff's testimony that she was unable to do yardwork due to her symptoms. AR 53. *See Batson*, 359 F.3d at 1196 ("Because the ALJ considered the claimant's testimony to be contradictory and unsupported by either the objective medical evidence or any persuasive reports of his doctors, the district court did not err in affirming the ALJ's determinations about [Plaintiff's] credibility."). The ALJ also cited to records indicating Plaintiff engaged in walking for self-care. AR 22, 770. This contrasts with Plaintiff's testimony that she experienced such difficulty walking that she could not walk more than a block. AR 245, 249. Similarly, the ALJ highlighted Plaintiff participating in yoga for self-care. AR 22, 781. That Plaintiff participated in yoga is inconsistent with Plaintiff's statements that she

has "no interest in activities," and that her pain made it difficult "to move at all." AR 245. Further, the ALJ noted that despite Plaintiff's symptoms, she "remained independent in activities of daily living." AR 23, 738.

Though the Court agrees Plaintiff's statements about her activities of daily living were not wholly consistent with Plaintiff's statements about her condition, the ALJ should have more clearly connected purported inconsistencies to ***specific statements*** made by Plaintiff. An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony.'" *Bunnell*, 947 F.2d at 345–46. An ALJ must point to specific testimony by the plaintiff or explain how the ability to perform a certain activity is inconsistent with the plaintiff's testimony. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) (reversing and remanding the lower court's denial of benefits where "[t]he ALJ did not explain how, in his view, [Plaintiff's] testimony about those daily activities is inconsistent with his testimony about the severity and frequency of his [impairments]."). This Court provided the above examples of Plaintiff's specific testimony; but where the ALJ fails to meet these requirements for specificity, the Court is not free to fill in the gaps. *Lambert*, 980 F.3d at 1278.

However, even if the Court fully credits Plaintiff's testimony regarding her activities of daily living, the ALJ provided two ***additional*** reasons to discount Plaintiff's testimony that this Court finds are clear and convincing.[4] *See Carmickle*, 533 F.3d at 1162-63 (upholding an ALJ's decision even where two of the ALJ's reasons supporting his adverse credibility finding were invalid, because "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity

---

[4] In the Joint Motion for Judicial Review, Plaintiff does not challenge either of the ALJ's two additional findings for discounting Plaintiff's testimony. ECF No. 10 at 20-23. Therefore, the Court deems any challenge to those reasons waived. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (an argument not made in Plaintiff's opening brief was deemed waived).

of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal. . . . Here, the ALJ's decision finding [the plaintiff] less than fully credible is valid, despite the errors identified above.") (internal alterations, quotations, and citation omitted); *Wells v. Comm'r of Soc. Sec.*, No. 1:17-CV-00078-SKO, 2017 WL 3620054, at *10 (E.D. Cal. Aug. 23, 2017) ("While the ALJ erred in providing one invalid reason for the credibility finding[,] that error was harmless, as substantial evidence still supports the ALJ's credibility determination notwithstanding the single errant rationale."); *Mukhtar Sou v. Berryhill*, No. C18-5165-RSM, 2018 WL 4205064, at *2 (W.D. Wash. Sept. 4, 2018) (explaining that even though one of the three reasons given by the ALJ for rejecting plaintiff's testimony as not credible was an impermissible abuse of discretion, the error was harmless because one of the reasons given was permissible, and "the court does not need to uphold every reason provided for discrediting a claimant as long as the remaining reasons are valid.").

First, the ALJ cited to objective medical evidence contradicting Plaintiff's testimony. The ALJ's conclusion that Plaintiff's statements were inconsistent with the objective medical evidence in the record is supported by substantial evidence. *See, e.g.,* AR 290-91, 297, 376-77, 386-87, 401, 797, 811, 817, 1177, 1218, 1540-41 (noting Plaintiff's ability to move her extremities well, stand without assistance, walk on her heels and toes without difficulty, and walk without the use of an assistive device; Plaintiff's providers noted full range of motion of her lumbar spine, no obvious muscle weakness independent of her pain, full strength in her extremities, an absence of neurological deficits and an unremarkable neurological exam, normal gait, and that surgery was either not warranted or could wait). Here, there is substantial evidence in the record to support the ALJ's ultimate credibility determination, notwithstanding the fact that Plaintiff has not challenged the ALJ's finding on this ground.

Second, the ALJ cited multiple medical records showing Plaintiff's improvement through treatment despite her symptom allegations. The ALJ determines whether to credit a claimant's statements about pain and limitations by referring to the factors set forth in 20

3:24-cv-00568-AHG

C.F.R. § 404.1529(c)(3), which include the frequency and intensity of the claimant's symptoms and the effectiveness of medication. The ALJ discredited Plaintiff's testimony because her conditions improved with treatment and medication. As the ALJ noted, Plaintiff received Toradol injections, steroids, and medications (e.g., tramadol and lidocaine patches) during a March 2022 urgent care visit. AR 565. The following month, Dr. Kureshi, Plaintiff's neurosurgeon, recommended facet joint injections. AR 800-01. The day of the injection, Plaintiff reported 100% relief; subsequently she experienced 50% relief of back pain. AR 1314. The ALJ also noted that in June 2022, Plaintiff reported 30% relief from cervical facet joint injections and 100% relief the day of a massage. AR 1314. The ALJ also highlighted that Plaintiff's pain levels became manageable to where she avoided Percocet, relied on occasional doses of Advil, exhibited a stable gait, and was able to walk without the use of an assistive device. AR 811, 817, 1425. The ALJ also pointed to records showing Plaintiff experienced 60% relief and "resolution of radicular symptoms" following a December 2022 epidural injection. AR 1314-15. The ALJ relied on records showing that as of May 2023, Plaintiff relied on Tylenol to where she only occasionally used Percocet (and she had not used it within the last three weeks). AR 1543. *See also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (upholding ALJ's discounting of claimant's credibility where claimant treated pain with over-the-counter pain medication) and *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (where an ALJ also may take into consideration that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Accordingly, the Court finds that the ALJ adequately articulated reasons to undermine Plaintiff's allegations regarding the degree of limitation she alleged.

//

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.    CONCLUSION

For the reasons set forth above, pursuant to sentence four of 42 U.S.C. § 405(g), **IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**. The Clerk shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated:  March 6, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge

21